## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **IKORONGO TECHNOLOGY LLC and** | § | |
| **IKORONGO TEXAS LLC,** | § | |
| *Plaintiffs,* | § | |
| | § | **Civil Action 6:20-cv-256-ADA** |
| *v.* | § | |
| | § | |
| **BUMBLE TRADING LLC,** | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

The Court considers Bumble Trading LLC's ("Bumble" or "Defendant") Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 251, which contains the original patent requirement. After considering the briefing (Dkt. Nos. 100, 125, 148) and oral arguments, the Court **GRANTS** Bumble's motion and finds the asserted claims 57, 63, 64, 66, 68, and 70 of U.S. Patent No. RE45,543 ("'543 Reissue") and asserted claims 33, 34, 38, 45, and 46 of U.S. Patent No. RE47,704 ("'704 Reissue") invalid.

## FACTUAL BACKGROUND

The '543 Reissue and the '704 Reissue are reissues of original U.S. Patent No. 7,080,139 ("'139 Patent"). The '139 Patent originally issued on July 18, 2006. The '543 Reissue reissued on June 2, 2015, nearly nine years later. The '704 Reissue reissued on November 5, 2019, over thirteen years later.

Ikorongo Technology LLC and Ikorongo Texas LLC ("Plaintiffs") sued Bumble for infringing the asserted claims. Neither party disputes the contents of the asserted patents or their file histories. No factual disputes continue to underly claim construction. Thus, no disputed material facts preclude summary judgment.

Original U.S. Patent No. 7,080,139

Because the specification plays an important role in meeting the original patent requirement, the Court provides an extended description of the '139 Patent.  The original '139 Patent bears the title, "Method and Apparatus for Selectively Sharing and Passively Tracking Communication Device Experiences," and its abstract echoes that focus:

> The present invention includes methods and devices for ***passively tracking and selectively sharing user experiences*** with communication devices, including computers, web-enabled telephones, and PDAs. User rating or comments on their experiences can be captured.

'139 Patent at Abstract (emphasis added).  The detailed description states that a "common theme among aspects of the present invention is collecting data regarding a user's computer usage experience and sharing that data." *Id.* at 2:26-28.  The summary states that the "present invention includes methods and devices for sharing communication device usage experiences, including computer usage experiences." *Id.* at 1:30-32.  "So-called 'buddies' identified on buddy lists of instant messaging products can share selected aspects of their computer usage experiences." *Id.* at 2:28-30; *see also id.* at 18:19-20.

The '139 Patent contains figures showing the operation of the invention.  Among these, figures 1, 8-11, 16, and 22-24 have the most relevance.  Figure 1 provides an overview of the system.  Toward the left, it shows "[t]racked activity may include Internet activity 120, **wireless network location track [sic] and interaction activity 121**." *Id.* at 4:65-67 (emphasis added).  The '139 Patent then immediately describes the types of activities tracked:

> Activities tracked in these domains may include view, listen, rate, comment, assign emoticon, send, watch, download, bookmark or visit. A user views a URL, watches a visual presentation and listens to an audio presentation. A user **visits a restaurant or other location**. A user who views, watches, listens or visits may respond to their experience. A user's response may be to rate, comment, assign an emoticon, send information to a buddy, download data or bookmark an item for later access.

*Id.* at 5:1-9 (emphasis added).

Figure 8A shows a user interface for administering a list of online buddies to share experiences with.  Figure 8D shows an interface for selecting topics such as "Food," "Games," "Music," and "Shopping" to share with the selected online buddies.  Figures 9-11 show user interfaces for sharing experiences with online buddies, including what users did, what topic each experience relates to, details of the experience, where the experience occurred, a thumbs up or thumbs down, and a time of the experience. *Id.* at 9:16-20.  The specification refers to these types of examples as "experiences tracked," such as in:

> The computer user **experiences tracked** could include viewing URLs, downloading files, listening to songs, viewing videos, making purchases, sending items from a user to their buddies, or general messaging between the user and buddies.
> **In addition to** computer user experiences, mobile communication device **locations can be tracked**, using any of the technologies described above. Activities related to location may include visiting the location, rating, commenting on it, assigning an emoticon, or connecting with another buddy or buddy of a buddy at the location. Proximity to a location may be variation on visiting the location.

*Id.* at 18:53-64 (emphasis added).

The system tracks, collects, and shares user experiences using "various databases and combinations of databases."  *Id.* at 2:43-74.  "One database is a visited URL database ('VUD')" that stores URLs visited by users.  *Id.* at 2:49-51.  "Another database used to practice aspects of the present invention is the visited location database ('VLD') 100B" that tracks physically visited locations.  *Id.* at 3:9-10.  Both the VUD and VLD store additional information describing an experience associated with each URL visit or physical location visit.  *Id.* at Figure 23 steps 2355-2366, 2:60-67, 3:10-12.

The VUD is used for "sharing communication device and computer usage experiences. One type of sharing communication device user experiences is sharing computer usage

experiences, including Internet browsing experiences." *Id.* at 17:41-45. "At least a portion of the user's computer usage experiences are tracked and reported to a tracking server." *Id.* at 18:38-39. "The computer user experiences tracked could include viewing URLs, downloading files, listening to songs, viewing videos, making purchases, sending items from a user to their buddies, or general messaging between the user and buddies." *Id.* at 18:52-57. An entry in the VUD may include, for each visited URL, a rating, emoticon, title, timestamps, ratings, description, comments, and other types of information. *Id.* at 2:50-3:8; *see also id.* at 5:1-9.

Like how the VUD stores a user's experiences when browsing the internet, the "VLD stores similar information for locations visited by users or participants carrying portable devices." *Id.* at 3:11-12. For each visit, the VLD monitors for "activity related to a location, such as bookmarking a location, rating a location, adding an emoticon or comments about the location," and adds information such as a "rating, location address, location description, a timestamp" or other information. *Id.* 17:3-17:25. The '139 Patent repeatedly shows that the VLD database stores the "Location Address, Location Description, Location Category(s), Username(s), Timestamp(s), Rating(s), Emoticon(s), Comment(s) & Bookmark(s)." *Id.* at Figure 16 element 100, Figure 22 element 100B, Figure 24 element 100B. "The VLD **also could** store **geographic** information regarding the location." *Id.* at 3:26-27 (emphasis added). "Sophisticated devices may include circuits that determine the device's location; these circuits may utilize GPS, DGPS, Loran or any other location fixing protocol. The physics of how the device and the location are associated are relatively unimportant; an independent service may be used to track locations visited by a user based on any of the protocols identified above or any other protocol." *Id.* at 3:31-38. "**In addition to** computer user experiences, mobile communication device locations can be tracked, using any of the technologies described above." *Id.* at 18:58-60 (emphasis added); *see also id.* at 3:12-25

4

(describing Bluetooth for tracking).  Figure 23 shows a process related to location monitoring.  The following passage describes the types of information stored in the VLD when various triggers occur:

> A location network directory **2312** is accessible, which reflects location of wireless devices **2354** and contains information such as the devices' location address, location description, a timestamp, and user ID **2358**. With this information, the system sets the action or activity type to "visit" a location and logs an entry into a visited location database **2358**. The system also monitors **2355** for activity related to a location, such as bookmarking a location, rating a location, adding an emoticon or comments about the location. . . . Typical activities include bookmarking **2359**, rating, or adding an emoticon **2363** or free text comment to a location reference. When a location is bookmarked **2359**, the system adds a bookmark flag, location address, location description, a timestamp and a user ID to the VLD or a buffer for later addition to the VLD. When a location is rated **2361**, the system adds the rating, location address, location description, a timestamp and the user ID to the VLD or a buffer for later addition to the VLD. When a location is flagged with an emoticon **2363**, the system adds the emoticon, location address, location description, a timestamp and the user ID to the VLD or to a buffer for later addition to the VLD. Similarly, when a user makes a comment on a location **2365**, the system adds the comment, location address, location description, a timestamp and the user ID to the VLD or to a buffer for later addition to the VLD. For each of these activities, fewer or more fields may be utilized in various embodiments.

*Id.* at 16:67-17:26.

The '139 Patent then describes how users can selectively share their experiences with buddies, for example, with friends on a "buddy list."  *See, e.g., id.* at 18:4-37. The parties do not dispute that this feature is part of the original invention and properly contained in the reissued claims.  Still, the shared information guides the Court's analysis.  Figure 9 shows "who 981 did 892 what 984 where 985 in what topic area 982 when 988. Ratings 986 and comments 987 also may be provided."  *Id.* at 9:17-20.  As to sharing the "where," "the name of a restaurant may be used instead of its Bluetooth access point address," and a banner, logo, or icon may represent the location  *Id.* at 9:41-46.

Finally, Figure 23 describes an embodiment specific to "wireless devices, such as cellular telephones and pagers." *Id.* at 16:49-50. "It is necessary for the user to have a wireless device 2354, which supports a location detection service. This support may be by Bluetooth, GPS or any other location detection technology." *Id.* at 16:53-56. The system "periodically receives information regarding the location of the wireless device 2356." *Id.* at 16:60-62.

The original '139 Patent contains 32 claims, including independent claims 1, 31, and 32. Of the independent claims, claim 1 is the longest. It relates to sharing categories of computer usage experiences with buddies when a user either browses URLs or visits a location. Claim 1 of the '139 Patent recites:

> 1. A method of sharing computer user experiences, including:
>     communicating with a registration server to register a user, for automatic client-side collection of computer usage experiences for future sharing, wherein the computer usage experiences include one or more of browsing URLs or visiting a location with a location-aware device that records the visited location;
>     accessing one or more of the user's messaging buddy lists and selecting one or more buddies with whom to share the automatically collected computer usage experiences;
>     defining categories of computer usage experiences to be shared with particular selected buddies;
>     tracking automatically on the client-side at least a portion of the user's computer usage experiences and reporting the user's computer usage experiences to a tracking server to be published to the particular buddies in accordance with their defined categories of sharing.

Claim 32 is the shortest and focuses on "sharing computer user experiences" with buddies by posting "the user's visited location data." It recites:

> 32. A method of sharing computer user experiences, including:
>     registering a user with a registration server to collect and share visited location data using a client-side application collected while visiting a location with a location-aware device that records the visited location;
>     accessing one or more of the user's messaging buddy lists to identify one or more buddies with whom the tracking data may be shared;
>     defining rights of the buddies to access the visited location data;
>     posting at least a portion of the user's visited location data for the buddies to access according to their defined rights.

<u>The Reissue Patents RE45,543 and RE47,704</u>

About nine years after the inventors filed the application for the original patent, and after a series of patent assignments, the patent's new owners filed the applications that issued as the '543 Reissue and the '704 Reissue.  The applicant filed theses as broadening reissues.  Dkt. No. 125 at 5 ("the '543 and '704 Patents were filed as broadening reissues").  Claim 33 of the '704 Reissue is representative of the asserted claims in that they focus on collecting and recording visited "geographic location data . . . using a satellite-based location-fixing protocol" and do not require sharing other experience information related to the visit. Claim 70 of the '543 Reissue does not require the use of a "satellite-based location-fixing protocol" and instead requires geographic location data collected from a "client-side application" as well as "quantifying relative influence of at least one user on other users."  Claim 33 of the '704 Reissue recites:

> 33. A method of operation of a location-aware cellular phone device comprising:
>> sending registration information to a registration server from the location-aware cellular phone device;
>> enabling access to one or more lists of other users to identify one or more other users with whom visited geographic location data is to be shared;
>> enabling definition of access rights for the one or more other users to access the visited geographic location data;
>> collecting the visited geographic location data for geographic locations visited by the location-aware cellular phone device using a client-side application, the visited geographic location data comprising a plurality of the geographic locations visited by the location-aware cellular phone device, each geographic location visited time-stamped with a time of visit, the geographic locations visited automatically and passively recorded by the location-aware cellular phone device using a satellite-based location-fixing protocol and a detection network directory; and
>> reporting information indicating the visited geographic location data collected by the location-aware cellular phone device.

This reissue patent claim can be coarsely summarized as a method for tracking a user with a GPS-enabled cell phone and sharing "visited geographic location data" to friends.  Plaintiffs do not separately argue the dependent claims.

## THE ORIGINAL PATENT REQUIREMENT

### Settled Law

The statutory basis of the "original patent requirement" lies in 35 U.S.C. § 251(a), which reads:

> Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.

Thus, the reissued claims must be "for the invention disclosed in the original patent."  35 U.S.C. § 251(a).  This § 251 requirement for the reissued invention to be disclosed in the original patent remains separate from the written description requirement of 35 U.S.C. § 112.

Compliance with the original patent requirement is a question of law. *Forum US, Inc. v. Flow Valve, LLC*, 926 F.3d 1346, 1350–51 (Fed. Cir. 2019).  A court may consider expert testimony to ascertain the meaning of a technical or scientific term, but expert testimony cannot supplant what a patent's disclosure "actually say[s]." *Forum*, 926 F.3d at 1351, 1352.

The Supreme Court and Federal Circuit have interpreted this statute to mandate that the alleged invention of a reissue claim be "clearly and unequivocally disclose[d] . . . ***as a separate invention***" in the original patent's specification. *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1362 (Fed. Cir. 2014) (synthesizing "150 years" of Supreme Court cases) (emphasis added). Reissue claims violate the original patent requirement where the original specification "merely suggested or indicated" or "serially mentioned" the limitations within a reissued claim. *Id.* at 1359, 1363. "[I]t is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification." *Id.*  Rather, the "particular combinations" of reissue claim limitations must be disclosed in the original patent specification "in an

explicit and unequivocal manner." *Id.* at 1363. "Whether or not the written description requirement of § 112 was satisfied here, . . . for § 251, it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. Rather, the specification must clearly and unequivocally disclose the newly claimed invention as a separate invention." *Id.* at 1362 (internal citations and quotations omitted).

This heightened standard protects the general public. The U.S. Patent Office may issue broadening reissue patents even after it publishes the issued patent and closes prosecution. When a reissue enlarges the scope of the patent, the patent owner "led the public to rely on the implied disclaimer involved in the terms of the original patent." *Miller v. Bridgeport Brass Co.*, 104 U.S. 350, 356 (1881). Thus, the scope of broadening reissue claims is limited to separate inventions that are clearly and unequivocally disclosed in the original specification. *Antares*, 771 F.3d at 1362.

Precedent includes examples of properly and improperly reissued claims. In *Antares*, the specification stated, "[a]lternatively, a push button could be located at the proximal end of the device," but this "alternative" suggestion failed to rise to the level of an explicit and unequivocal disclosure of a safety feature of an injection device claimed on reissue when broadened from a claim on jet-injection devices. *Id.* at 1363. In contrast, the Federal Circuit held that an inventor properly added claims on computer-controlled rollers when the original claims covered only manually controlled rollers because the specification described an embodiment exactly aligned with the broader scope by stating that the rollers could be "raised either mechanically by the roller cams or electronically by the computer controlling the router. *In re Amos*, 953 F.2d 613, 614, 617–19 (Fed. Cir. 1991).

## Resolution of Disputed Law

The parties dispute two nuances of the original patent requirement.

First, Plaintiffs argue that the Court can find clear and unequivocal support for broadened reissued claims in the original claims.  Plaintiffs appear to take this position because disputes rarely arise over reissued claim elements that remain identical to an original claim element.  In these types of cases, the parties usually dispute only whether a small, broadened part of the claim meets the original patent requirement.  But in cases such as this, where the reissued claim completely rewrites the original claim, the Court disagrees with Plaintiffs because "by definition in reissue the original claims do not disclose the invention claimed on reissue." *Antares*, 771 F.3d at 1362; 35 U.S.C. § 251 ("Whenever any patent is, **through error**, deemed wholly or partly inoperative or invalid . . . the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent") (emphasis added). That is why "the original patent requirement focuses on the original specification rather than the original claims." *Antares*, 771 F.3d at 1362.

Second, Bumble argues that "disparate" references to claim elements cannot be "stitched-together" when scattered across "all corners of the specification" to satisfy the original patent requirement.  Dkt. 148 at 6.  The Court disagrees.  In evaluating the original patent requirement, the Court looks to the original patent in its entirety but excludes the erroneous claims.  Patent claims frequently recite multiple steps or components, and patent specifications frequently contain corresponding, sequential sections written over many pages to explain the details of each claimed step or component.  Patents often also contain an overview section stitching together these sequential sections of the specification into an overarching system or method.  Thus, descriptions of an original invention scattered across a specification may provide clear and unequivocal support for reissued claims, for example, when tied together by an overview.

## ANALYSIS

### The Reissue Patents Broaden the Original Claims

As a preliminary matter, the Court compares the reissued claims to the claims of the '704 Reissue to determine if the reissued claims broaden the scope of invention. "A broadened reissue claim is a claim which enlarges the scope of the claims of the patent . . . . A claim of a reissue application enlarges the scope of the claims of the patent if it is broader in at least one respect, even though it may be narrower in other respects." MPEP § 1412.03.

Each of the reissue claims is broader in at least one respect. The reissue claims generally cover different aspects of the invention compared to the original claims. For example, original claim 32 requires "registering a user with a registration server," but reissue claim 33 of the '704 Reissue does not. The parties do not meaningfully dispute that the reissue claims are broadening. Dkt. No. 125 at 5 (admitting "the '543 and '704 Patents were filed as broadening reissues").

The Court agrees with Plaintiffs that many of the disputed aspects are narrower than the original claims. But the law requires meeting the original patent requirement if at least one aspect of the claim is broader, even if other aspects are narrowing. None of the cases provided by Plaintiffs allow the Court to exempt sections of the claim from the original patent requirement. Thus, the Court enforces the original patent requirement by determining if all challenged aspects of the reissued claims were clearly and unequivocally disclosed in the original '139 Patent.

### Parties' Arguments

Defendant argues that the reissued claims differ substantially from the original invention because the original '139 Patent focuses on sharing general "experiences" with buddies, not on a phone for sharing only a user's visited geographic location data. The reissue claims focus on collecting and sharing "visited geographic location data" using a "satellite-based location-fixing

11

protocol," except for the distinctions noted above.  Defendant argues that the original '139 Patent does not clearly and unequivocally disclose any embodiment that focuses on the "geographic" location-tracking aspect and sharing of "visited geographic location data" separate from other aspects related to sharing user "experiences."

Plaintiffs argue that the specification clearly and unequivocally supports the claims of the reissue patents.  The specification describes tracking a user's visit to a location ('139 Patent at 5:1-9, 18:23-29, 18:58-64), logging the visited location in a visited location database ('139 Patent at 3:26-27, 3:43-48, 5:1-3, 16:63-17:2), and sharing experiences with buddies (*passim*).  Plaintiffs argue that the shared "experiences" include sharing geographic location data about the visits.  Plaintiffs then argue that the specification complies with § 112, that the claims of the original '139 Patent provide clear and unequivocal support, and that expert testimony supports its argument.

<u>Resolution</u>

The Court scoured the specification for a clear and unequivocal disclosure of the following aspects common to the reissue claims: (1) collecting "visited geographic location data;" (2) sharing such visited geographic location data ("posting at least a portion of the user's visited location data" in reissue claim 33) separate and apart from sharing general experiences; and (3) using a satellite-based location-fixing protocol.  The Court considered the '139 Patent in its entirety, including the passages cited in Plaintiffs' brief and the figures identified during oral argument. The specification fails to clearly and unequivocally disclose aspects (2) and (3) as parts of the original invention.

As to aspect (1), the specification mentions "geographic" location data only once as data optionally collected in addition to location information in the VLD.  *Id.* at 3:26-27 ("The VLD also could store geographic information regarding the location, such as geo-coded data.").  This type of data collection fits with the overarching ideas of passively tracking a user by collecting

data.  *Id.* at abstract, 2:26-28.   Thus, this optional storage of visited geographic location data satisfies the original patent requirement for aspect (1) of the reissued claims.

As to aspect (2), the Court finds the specification fails to clearly and unequivocally disclose sharing the visited geographic location data *separate and apart* from sharing experiences generally as the original invention.   The separation plays an important role because it changes the fundamental nature of the invention from a system for sharing experiences, such as reviews of activities, into a tracking device that allows your friends to track your location.

The specification only mentions "geographic" location data at 3:26-27 and describes this geographic location data as something "also" stored alongside other experience and location information.   Thus, the only explicit reference to "geographic" location data does not unequivocally support claiming storing "geographic" location data in the VLD as the original invention without "also" claiming storing the rest of the information in the VLD.

The "particular combinations" of reissue claim limitations, in this case geographic location data separate from other experience information, must be disclosed in the original patent specification "in an explicit and unequivocal manner."   *Antares*, 771 F.3d at 1363.   The Court instead finds that the specification repeatedly and consistently describes sharing other experience-related information in combination with the location. '139 Patent at Figure 9 (showing general experience information), Figure 16 element 100 (listing types of accompanying experience information), Figure 22 element 100B (listing types of accompanying experience information), 2:49-3:12; 5:1-9, 13:36-40, 17:1-25, 17:41-45, 18:53-64.   The mention of "location" or "visit" in a lengthy list of combinations and alternative possibilities of what is included in an "experience" does not make it clear and unequivocal that the original invention focuses on sharing only "geographic" location data. *See Antares*, 771 F.3d at 1359 (finding that safety features "serially

mentioned as part of the broader disclosure" did not amount to an explicit and unequivocal disclosure).  Nowhere does the '139 Patent describe a system or method that shares the specific combination of only geographic location data without other related experience information, as claimed.

The specification's repeated mentions of a "visit" or "location," without more, do not serve as a clear and unequivocal reference to "visited geographic location data."  The question is not whether the words "visit" or "location" as used in the specification *might encompass* geographic location data; the question is whether that use of "visit" or "location" clearly and unequivocally does so.  The figures show sharing a "location" or "visit" by using "useful shorthands" such as names, logos, and banners.  *Id.* at figure 9, 9:39-49.  Thus, any disclosure of sharing a "location" or "visit" may refer to sharing the name of the location or logo and fails to serve as a clear and unequivocal reference to "geographic" location data.

Even when the specification does mention sharing location information, it arises in the context of sharing location information *in addition* other aspects of the experience.  The abstract describes the original invention as "methods and devices for passively tracking **and** selectively sharing user experiences." *Id.* (emphasis added). The specification repeatedly echoes this requirement. *Id.* at 3:26-27 ("The VLD **also could** store geographic location information regarding the location, such as geo-coded data") (emphasis added), 4:65-67 ("wireless network location track [sic] **and** interaction activity 121") (emphasis added), 18:58-60 ("**In addition to** computer user experiences, mobile communication device locations can be tracked") (emphasis added).  Plaintiffs provide no reason for the Court to ignore these repeated statements that the original invention includes location information *in addition to* other aspects of an experience.

As to aspect (3)[1] the specification does not make it clear and unequivocal that "satellite-based" location tracking is part of the original invention.  The original specification does not use the word "satellite" at all.  At best, the specification recites:

> Several equivalent methods of associating a portable device with a location are available. Sophisticated networks may fingerprint, triangulate or otherwise locate a wireless device based on radio signal characteristics. Sophisticated devices may include circuits that determine the device's location; these circuits may utilize GPS, DGPS, Loran or any other location fixing protocol. The physics of how the device and the location are associated are relatively unimportant; an independent service may be used to track locations visited by a user based on any of the protocols identified above or any other protocol.

*Id.* at 27-38.  Because the specification deemed this detail "unimportant," it cannot serve as clear and unequivocal support for a limitation defining the scope of the original invention.  A clear and unequivocal statement would have instead explicitly described "satellite" based tracking as an important limitation instead of treating it like an unimportant variation more suited for a dependent claim.  The mention of "GPS" and "DGPS" as part of a serial list of suggestions does not amount to an explicit and unequivocal disclosure that the scope of the original invention is limited to all "satellite-based location-fixing protocol[s]" as recited in reissue claim 33, at the exclusion of Bluetooth, triangulation, radio signal, Loran, and other location fixing protocols. *See Antares*, 771 F.3d at 1363 (finding that safety features "serially mentioned as part of the broader disclosure" did not amount to an explicit and unequivocal disclosure).  What is "necessary" in the original invention is a "wireless device 2354, which supports a location detection service.  This support may be Bluetooth, GPS or any other location detection technology." '139 Patent at 16:53-56.

Public policy supports the Court's conclusions.  For about nine and thirteen years for the '543 Reissue and '704 Reissue, respectively, the patent owner led the public to rely on the implied

---

[1] Not applicable to the '543 Reissue, claim 70.

disclaimer involved in the terms of the original patent. *Miller*, 104 U.S. at 356. The original '139 Patent put the public on notice of an invention related to sharing experiences, generally, with buddies. A fair reading did not put the public on notice that the claims should have been corrected to cover a satellite-based, geographic location tracking invention for sharing one's visited geographic location data with buddies, without including the sharing of related experience information.

<u>Plaintiffs' Remaining Arguments Rejected</u>

The cited cases do not support Plaintiffs' arguments. In *Amos*, "the exact embodiment claimed on reissue was expressly disclosed in the specification." *Antares*, 771 F.3d at 1363 (explaining the holding in *Amos*, 953 F.2d at 617–19). Here, the exact embodiment with "the geographic locations visited automatically and passively recorded by the location-aware cellular phone device using a satellite-based location-fixing protocol" as recited in reissue claim 33 remains missing from the specification. Additionally, the use of "geographic" location data is mentioned only in addition to other experience information, and the scope of all "satellite-based" location fixing protocols remains missing entirely.

In *Antares*, the "original claims [were] significantly different in scope and coverage than the asserted claims." 771 F.3d at 1362. Thus, the Federal Circuit looked to the specification and found that "the original specification does not adequately disclose the later-claimed safety features" because "[t]he specification discussed only one invention: a particular class of jet injectors." *Id.* "Although safety features were mentioned in the specification, they were never described separately from the jet injector." *Id.* at 1363. Here, the Court finds that the original '139 Patent specification discloses two class of inventions: experience sharing systems and methods for internet activity and experience sharing systems and methods for visits, but not geographic location

tracking devices.  Although the original '139 Patent mentions "GPS" based tracking in the specification as part of tracking users for sharing their general experiences when visiting locations, tracking users using any "satellite-based" tracking protocol is never described at all, much less described separately from generally sharing experiences at a particular location.

Plaintiffs' other arguments remain unpersuasive.  Plaintiffs argued that original claim 32 supports the reissued claims.  The Court did not look to original claim 32 of the '139 Patent to find the invention disclosed in the original patent because "by definition in reissue the original claims do not disclose the invention claimed on reissue. Thus, we must look to the specification." *Antares*, 771 F.3d at 1362.  Plaintiff also urged the Court to consider supporting expert testimony.  The Court considered it but found the testimony of Plaintiffs' expert unnecessary because expert testimony cannot supplant what a patent's disclosure actually says.  *Forum*, 926 F.3d at 1351, 1352.   Plaintiffs argued that the original '139 Patent undisputedly provides § 112 written description support for the claims.  But "[w]hether or not the written description requirement of § 112 was satisfied here, . . . for § 251, it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. Rather, the specification must clearly and unequivocally disclose the newly claimed invention as a separate invention."  *Antares*, 771 F.3d at 1362 (internal citations and quotations omitted).

<u>**CONCLUSION**</u>

It is **ORDERED** that Defendant Bumble Trading LLC's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 251 (Original Patent Requirement) is **GRANTED**. Accordingly, under 35 U.S.C. § 251, asserted claims 57, 63, 64, 66, 68, and 70 of U.S. Patent No. RE45,543, and asserted claims 33, 34, 38, 45, and 46 of U.S. Patent No. RE47,704, are invalid.

SIGNED this 12th day of April, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE